(C. D. 709)

ABERCROMBIE & FITCH CO. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided December 3, 1942)

*Lane & Wallace* (*William H. Fox* of counsel) for the plaintiff.

*Paul P. Rao*, Assistant Attorney General (*Richard E. FitzGibbon*, special attorney), for the defendant.

Before TILSON and KINCHELOE, Judges

KINCHELOE, Judge: This suit is brought by plaintiff against the United States for the purpose of recovering certain duty alleged to have been wrongfully levied by the collector of customs at the port of New York on an importation of tarred hemp deck-tennis nets. Duty was assessed on the merchandise at 40 per centum ad valorem under paragraph 1023 of the Tariff Act of 1930, as manufactures wholly or in chief value of vegetable fiber, except cotton, not specially provided for. The merchandise is claimed by plaintiff to be properly dutiable at the rate of 20 per centum ad valorem under the provisions of paragraph 1502 of said act, by virtue of the trade agreement with the United Kingdom published as T. D. 49753.

The case has been submitted for decision by both sides upon a written stipulation to the effect that the sample of the merchandise marked in evidence as exhibit 1 is a true and correct sample of the items invoiced as "Tarred Hemp Deck-Tennis Nets, 1½′ x 20′"; that said exhibit 1 is a necessary part of the equipment used in the game of deck tennis, and that the rules for said game are set forth in the leaflet marked exhibit 2.

Paragraph 1502 under which plaintiff makes its claim, reads, so far as relevant, as follows:

PAR. 1502. Boxing gloves, baseballs, footballs, tennis balls, golf balls, and all other balls, of whatever material composed, finished or unfinished, primarily designed for use in physical exercise * * *, and all clubs, rackets, bats, golf tees, and other equipment, such as is ordinarily used in conjunction therewith, all the foregoing, not specially provided for, 30 per centum ad valorem; * * *.

The provision of the trade agreement with the United Kingdom, relied on by the plaintiff and included under schedule IV thereof, reads as follows:

| Tariff Act of 1930 paragraph | Description of article | Rate of duty |
|---|---|---|
| 1502 | Field-hockey sticks and guards, polo mallets, table-tennis bats, croquet mallets, golf clubs, soccer guards, and tennis nets. | 20% ad val. |

There is no controversy as to the facts in this case, the issue presented being purely one of law, namely, whether the articles *eo nomine* mentioned in the modification contained in said trade agreement with

the United Kingdom are to be limited to equipment which is ordinarily used in conjunction with a ball.

The merchandise under consideration consists of a hemp net, approximately 20 feet long and 18 inches wide. In the game called deck tennis this net is strung across a court about 22 feet wide, at a height of 5 feet. The game is played by tossing a ring from one side of the court to the other, over the net, by hand. The other player must catch the ring in his hand before it hits the ground or floor, and immediately return it in the same manner. This goes on until one of the players fails to catch the ring, or the ring hits the net. Score is kept in the same manner in which score is kept in the game of tennis. In other words, no ball is used in the game of deck tennis, so that on its face it cannot of course be said that the present deck-tennis nets are used in conjunction with any ball.

Counsel for the plaintiff in their brief argue that the term "tennis nets," included in the description of the articles intended to be given the benefit of the lower rate of duty under said trade agreement, is without limitation or qualification, and therefore includes every kind and class of merchandise properly referable thereto, either directly or as a species, the genus of which is embraced within the particular nomenclature. In support of such contention several decisions are cited with reference to various *eo nomine* provisions contained in certain tariff acts.

On the whole, we are fully in agreement with such rule, but we do not think this principle can be applied to all *eo nomine* provisions in trade agreements, for the reasons hereinafter stated.

If said paragraph 1502 specially provided *eo nomine* for "tennis nets," without qualification, it might perhaps properly include tennis nets of all kinds and forms, as contended by plaintiff. But paragraph 1502 does not provide for any tennis nets by name, but only for balls designed for use in physical exercise, and such *equipment "as is ordinarily used in conjunction therewith."* Obviously the deck-tennis nets here in question cannot be said to be equipment necessarily or ordinarily used in a game for exercise in which a ball is used. Hence, they would not be comprehended within the purview of paragraph 1502 of said Tariff Act of 1930. Therefore, if the deck-tennis nets in question were held to be included in the said trade agreement provision for "tennis nets," it would on its face be an enlargement of the present tariff act by placing in said paragraph 1502 merchandise not before comprehended therein.

Under section 350 (a) of the Tariff Act of 1930, as amended (T. D. 47117), the President is authorized "(1) To enter into foreign trade agreements    *    *    .*" and "(2) To proclaim such modifications of *existing duties* and other import restrictions    *    *    * as are required or appropriate to carry out any foreign trade agreement that the

President has entered into hereunder," and subsection (c) thereof provides that "As used in this section, the term 'duties and other import restrictions' includes (1) rate and form of import duties and classification of articles   *   *   *." [Italics ours.]

From this counsel for plaintiff further argue that under said section 350 it is obvious that the President may reclassify an article for duty purposes, removing it from one paragraph in the tariff act and providing for it in another paragraph of the teriff act, in a foreign trade agreement.

It must not be overlooked, however,- that under said section 350 (a), authorizing the President to enter into foreign trade agreements, he is only authorized to proclaim modifications of "existing duties and other import restrictions," which it is expressly stated are to include the "rate and form of import duties and classification of articles." In our opinion, this can only mean that the President has authority to modify existing rates of duty on existing classifications of imported merchandise under the respective paragraphs of the Tariff Act of 1930 by increasing or decreasing such existing rates by not more than 50 per centum.

In doing this the President can of course use the identical language in the trade agreement in describing the merchandise that is to be subject to the modified rate of duty as that contained in the corresponding or *designated paragraph* of said tariff act, or he can describe or reclassify a general class of merchandise more narrowly or specifically than that described in the *designated tariff paragraph* so as to limit said increased or decreased rate or rates of duty to certain particular articles or class of merchandise covered thereby. But we do not think the President has any power to enlarge the Tariff Act of 1930 by creating new provisions in the trade agreement not already covered by the respective paragraphs of said act. And the arrangement of schedule IV of said trade agreement, with a description of the merchandise that is to be subject to the reduced rate of 20 per centum ad valorem set forth in one column, alongside the designated paragraph number 1502 of said tariff act in the left-hand column, clearly indicates, in our opinion, that the merchandise described in such trade agreement provision is intended to be limited to merchandise already comprehended within said *designated tariff paragraph*. We think this is further borne out by the arrangement of the schedules in all the trade agreements entered into so far.

We can see no other good reason for the designation of any particular paragraph number of the Tariff Act of 1930 alongside a trade agreement provision, if it were not to limit the effect of such provision to merchandise believed by the negotiators to be within the classification of the designated tariff paragraph at the time of entering into such agreement.

In this respect we think it is entirely in accordance with said section 350 (a), giving the President the power and authority, in making trade agreements, to raise or reduce existing rates of duty under existing tariff classifications. And we think it also accords with the express language of said trade agreement with the United Kingdom itself, which under the heading of schedule IV reads:

NOTE.—The provisions of this Schedule shall be construed and given the same effect, and the application of collateral provisions of the customs laws of the United States to the provisions of this Schedule shall be determined, insofar as may be practicable, as if each provision of this Schedule appeared respectively in the statutory provision noted in the column at the left of the respective descriptions of articles.

The foregoing provision was no doubt in recognition of the fact that under the authority of said section 350 (a) modifications of any rates of duty must be with reference to rates under existing tariff classifications, and the arrangement of the said trade agreement provisions alongside of corresponding paragraph numbers of the tariff act was probably deemed the simplest way of indicating that the merchandise intended to be affected by the trade agreement provisions was that coming under the classification of the respective tariff paragraphs.

In *United States* v. *American Machine & Metals, Inc.*, 29 C. C. P. A. 137 (C. A. D. 183), certain merchandise invoiced as "Vicker's Hardness Testing Machines," composed of base metals and designed to determine the hardness of metals, was assessed for duty at 60 per centum ad valorem under paragraph 228 (a) of the Tariff Act of 1930, as "optical measuring or optical testing instruments," on account of having a microscope permanently attached to the articles.

The merchandise was claimed to be dutiable at only 20 per centum ad valorem under paragraph 353 of said act, as modified by the provision of the trade agreement with Switzerland (T. D. 48093), reading as follows:

testing machines for determining the strength of materials or articles in tenl sion, compression, torsion, or shear, having as an essential feature an electricaelement or device, and parts thereof; any of the foregoing, finished or unfinished, wholly or in chief value of metal, and not specially provided for, 20% ad val.,

or under paragraph 372 of said act, as modified by said trade agreement, as

machines not specially provided for, finished or unfinished, for determining the strength of materials or articles in tension, compression, torsion, or shear, 20% ad val.

This court found that the imported merchandise was more specifically described in both paragraphs 353 and 372 of said act than in paragraph 228 (a), under which assessed, but held the merchandise dutiable under paragraph 353, as modified by said trade agreement, at 20 per centum ad valorem. On appeal the appellant contended

that the articles were not classifiable under paragraph 353 as modified by the Swiss Trade Agreement, for the reason that (1) they were not machines "for determining the strength of materials or articles in tension, compression, torsion, or shear," as provided in the modifications of both paragraphs 353 and 372 by the Swiss Trade Agreement, and (2) that they were also not classifiable under paragraph 353 for the reason that they had no electrical element or device as an essential feature.

Upon the first point, our appellate court was of the opinion that the appellant's claim was without merit. Upon the second point—whether or not the articles there involved had as an essential feature an electrical element or device—the court was of the opinion that it was unnecessary to determine that question for the reason that, if the articles were not classifiable under paragraph 353, as modified by said Swiss Trade Agreement, at 20 per centum ad valorem, they were classifiable under paragraph 372, as modified, at the same rate. The question of the power of the President under said section 350 (a) was therefore not passed upon by the court.

That decision therefore was in no way confirmatory of the contention of the plaintiff in the present case, that the President has the power under said section to reclassify an article for duty purposes by removing it from one paragraph in the tariff act and providing for it in another paragraph of the act, or by enlarging the operation of any designated tariff paragraph so as to make it include merchandise not originally covered thereby. On the contrary, we think the only expression of our appellate court so far bearing on this point is that found in the recent case of *United States* v. *Canadian National Railways*, 29 C. C. P. A. 272 (C. A. D. 202), which would indicate an opposite view to that contended for by plaintiff herein.

In that case certain merchandise had been assessed for duty as lithographs not exceeding $^{12}/_{1000}$ of an inch in thickness, at 30 cents per pound, under paragraph 1406 of the Tariff Act of 1930. It was claimed to be dutiable at 7½ or 12½ per centum ad valorem as printed matter of bona fide foreign authorship under paragraph 1410 of the Tariff Act of 1930, as modified by the trade agreement with Canada (T. D. 49752). The relevant provision of said paragraph 1410 reads, "printed matter * * * not specially provided for," and the language of said trade agreement modifying same reads, "Tourist literature containing historical, geographic, time table, travel, hotel, or similar information, chiefly with respect to places or travel facilities outside the continental United States: If of bona fide foreign authorship, 7½% ad val." The appellate court held the merchandise dutiable as assessed by the collector, but, in the course of its decision, used the following significant language:

In the modification of said paragraph 1410, by the said trade agreement, "tourist literature" was first mentioned *eo nomine*. That fact, however, is of no

importance here for the reason that the portion of the said agreement modifying paragraph 1410 was clearly intended to change the rate of duty only on articles *already embraced within the scope of said paragraph.* [Italics ours.]

It was of course deemed by the court that "tourist literature," lithographically printed, was not so embraced in said paragraph 1410 when said trade agreement became effective, but was more specifically covered by said paragraph 1406, as lithographically printed matter, under which it was assessed.

We think this lends strong support to our own views in the present case that the *eo nomine* provision for "tennis nets" in the trade agreement with the United Kingdom, alongside the designated paragraph number 1502 of the Tariff Act of 1930, was clearly intended to cover only such tennis nets as were originally comprehended by said tariff paragraph, and was not intended to enlarge upon the operation of said paragraph by including merchandise not before classifiable therein, such as the deck-tennis nets in issue.

For all of the foregoing reasons we overrule the claim of the plaintiff herein. Judgment will be rendered accordingly.