BEFORE THE FIRST DIVISION, DECEMBER 13, 1944

No. 49860.—Protest 68878–K of Chamberlain Importing Co. (Los Angeles).

WALKER, Judge: The merchandise involved in this case consists of tennis-racket frames. According to the testimony and the exhibits before us they are composed of laminated wood, two strips of ash on either side of a center strip of walnut. On the front and back panels, beginning at the bottom of the bow and running the length of the handle, there is inlaid a strip of what was identified by the plaintiff's witness as cane or rattan.

Duty was assessed on the frames at the rate of 45 percent ad valorem under the provision in paragraph 409, Tariff Act of 1930, for—

—articles not specially provided for, wholly or partly manufactured of rattan * * *

and they are claimed to be properly dutiable at the rate of 20 percent ad valorem under the provisions of paragraph 412, Tariff Act of 1930, as modified by the Canadian Trade Agreement reported in T. D. 49752 for:

* * * tennis-racket frames valued at $1.75 or more each * * * wholly or in chief value of wood.

There is no dispute but that the rackets involved are valued at $1.75 or more each, and that they are in chief value of wood.

The plaintiff's case is based upon relative specificity, and it is argued that the provision for tennis-racket frames, being an *eo nomine* designation, is more specific than the general provision for "articles not specially provided for, wholly or partly manufactured of rattan," and it is pointed out that by the *eo nomine* provision tennis-racket frames are "specially provided for."

The defendant's position is that the provision for tennis-racket frames found in paragraph 412, as modified, covers only such tennis-racket frames as would have been classifiable thereunder without considering such modification—in other words, that the modification did not purport to bring within the scope of paragraph 412 merchandise which would not have been otherwise covered thereby, but only intended to modify the rates of duty thereunder.

There does not seem to be any dispute but that as between the provisions of paragraph 409 and the provisions of paragraph 412 as they existed prior to the negotiation of the trade agreement, the tennis-racket frames in question would be properly classified under the former, counsel for both parties citing *Bough* v. *United States*, 14 Ct. Cust. Appls. 60, T. D. 41575, on this point. It therefore may be taken to be settled that tennis-racket frames such as those at bar were, prior to the negotiations of the trade agreement, embraced within the provisions of paragraph 409.

The contention of the defendant is supported by the decision of the Second Division of this court in the case of *Abercrombie & Fitch Co.* v. *United States*, 9 Cust. Ct. 336, C. D. 709, wherein the court expressed the opinion that under the provisions of section 350 (a), Tariff Act of 1930 (48 Stat. 943; extended 50 Stat. 24), authorizing the President to enter into trade agreements with foreign governments or instrumentalities thereof, the authority of the President to pro-

claim modifications of "existing duties and other import restrictions" is limited to modifying existing rates of duty on existing classifications, that is to say that such modifications can only apply to merchandise already comprehended within the designated tariff paragraph.

Reference was made in the opinion in that case to the decision in *United States* v. *Canadian National Railways*, 29 C. C. P. A. 272, C. A. D. 202. In that case certain lithographically printed tourist literature was assessed with duty under the provision for lithographs in paragraph 1406, and was claimed entitled to a lower duty under the provisions of paragraph 1410, as modified by the Canadian Trade Agreement here involved, for "tourist literature." The latter designation did not appear in paragraph 1410 prior to the time the said trade agreement became effective, but there was provision therein for "printed matter * * * not specially provided for, if of *bona fide* foreign authorship."

It was the appellant's contention there that tourist literature which had been lithographically printed was dutiable under paragraph 1406 prior to the time the trade agreement became effective, and that the only tourist literature intended to be affected by the trade agreement modification was that embraced within paragraph 1410. Appellee in that case, as does the plaintiff here, based his argument on relative specificity.

The court there said:

In the modification of said paragraph 1410, by the said trade agreement, "tourist literature" was first mentioned *eo nomine*. That fact, however, is of no importance here for the reason that that portion of the said agreement modifying paragraph 1410 was clearly intended to change the rate of duty only on articles already embraced within the scope of said paragraph.

The latter opinion, it will be noted, does not go as far as that in the *Abercrombie & Fitch Co.* case by attempting to define the scope of the President's authority under section 350 (a), *supra*. We are satisfied, however, that it could not have been the intent of the negotiators of the trade agreement here involved to transfer to paragraph 412 merchandise ordinarily classified under paragraph 409 for the reason that the rate under the latter is 45 percent ad valorem while the rate applicable to tennis-racket frames under the former as modified by the trade agreement is 20 percent, or more than 50 percent of a reduction. This is specifically forbidden in section 350 (a) (2) in the following language:

* * *. No proclamation shall be made increasing or decreasing by more than 50 per centum any existing rate of duty or transferring any article between the dutiable and free lists. * * *.

and it must be presumed that it was not the intent of the negotiators to violate this prohibition.

It therefore follows that the tennis-racket frames here involved are not covered by the provisions of paragraph 412, as modified, as claimed, but that the classification of the collector was correct.

Judgment will issue overruling the protest accordingly.