Judgment will be entered accordingly.

(C. D. 1146)

WILL & BAUMER CANDLE CO., INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided December 15, 1948)

*John F. Nash* for the plaintiff.
*David N. Edelstein*, Assistant Attorney General (*William J. Vitale*, special attorney), for the defendant.

Before OLIVER, COLE, and MOLLISON, Judges; MOLLISON, J., dissenting

OLIVER, Chief Judge: The merchandise covered by this protest consists of glass containers, invoiced as "empty glass jars," imported from Canada, which were assessed with duty as decorated articles in chief value of glass, not specially provided for, at the rate of 60 per centum ad valorem under the provisions of paragraph 218 (f) of the Tariff Act of 1930. The plaintiff claims that they are properly dutiable as unfilled "jars" in chief value of glass, not specially provided for, at the rate of ½ cent per pound under the provisions of paragraph 217 of the same act, as modified by the trade agreement with Mexico, T. D. 50797.

The pertinent statutory provisions are as follows:

PAR. 218. (f) * * * and all articles of every description not specially provided for, composed wholly or in chief value of glass * * * decorated or ornamented in any manner * * * filled or unfilled * * * 60 per centum ad valorem.

PAR. 217. Bottles, vials, jars * * * wholly or in chief value of glass, filled or unfilled * * *: If holding more than one pint, 1 cent per pound; * * *: *Provided*, That the terms "bottles," "vials," "jars," * * *, as used herein, shall be restricted to such articles when suitable for use and of the character ordinarily employed for the holding or transportation of merchandise * * *.

The provisions of the trade agreement, T. D. 50797, under which the importer makes its claim, so far as pertinent, read as follows:

| Tariff Act of 1930 paragraph | Description of article | Rate of duty |
|---|---|---|
| 217 | Bottles, vials, jars, ampoules, and covered or uncovered demijohns, and carboys, any of the foregoing, wholly or in chief value of glass, unfilled, not specially provided for:<br>If holding more than 1 pint | ½¢ per lb. |

An official sample of the merchandise in question was received in evidence as exhibit 1. It consists of a cylindrical, plain glass container, about 9½ inches in height and 2¼ inches in diameter, having a graduated depression or indentation in it running practically the entire length of the article. There are also two lugs or projections on the top rim. There is no stopper or covering used on this glass container. The trade name "Sanctolite" is molded or blown on the surface at the top. Below the name there are three vertical lines running parallel to each other approximately one-eighth of an inch apart. The two side lines are 3½ inches long and the center line 4½ inches, extending 1 inch below the other two lines. Beneath these lines, and almost touching the long center line, there appears in raised letters the following legend:

LA CIE DE CHANDELLES
WILL & BAUMER      TEE.
CANDLE CO.      LTD.
MONTREAL, CAN.

The name "Sanctolite" is used to designate a candle (plaintiff's illustrative exhibit A) which is inserted into the imported glass container or formed therein. The candle and the glass container are sold as a unit to churches and institutions throughout the United States for use in a sanctuary lamp. There was also received in evidence as an illustrative exhibit the patented red glass sanctuary lamp and stand in which the imported article, with candle, is inserted (illustrative exhibit B). There is a "lug" or bulge in the lower portion of the red glass lamp shell which fits into the indentation in the imported glass container (exhibit 1). A sample complete with candle was received in evidence (illustrative exhibit C) to illustrate the condition in which the imported glass articles are sold and used in this country.

The treasurer of the plaintiff corporation testified that originally the "Sanctolite" candles (illustrative exhibit A) sold by his company were not shipped in these imported glass containers but were shipped in wooden or cardboard cases; that due to high temperature and handling, the candles often became damaged and out of shape; and that the company had a great number of claims against it as a result of that method of shipment. He testified that to rectify such conditions his company had developed the glass container before us for holding and shipping these candles to its customers. The container and candle are used as a unit and inserted in the sanctuary lamp. The testimony would indicate that the importer's customers discarded the glass container (exhibit 1) after the candle was consumed. The imported glass container complete with the candle filler is sold as a "Sanctolite" as one article. Neither the candles nor the glass containers are ever sold separately (R. 15). The witness explained that the "lug" in the red sanctuary lamp (illustrative exhibit B) prevents the insertion in it of any container other than the type of container before us (exhibit 1), which has a graduated indentation or groove permitting the "lug" to slide into it. He further testified that the three lines beneath the word "Sanctolite" on the glass container mean nothing to his company and that he did not know whether they were on the specifications given the manufacturer. The witness stated that, in his opinion, these three lines do not ornament the container to any extent and that the lines and words on the container cannot be seen when the candle is burning, since the sanctuary lamp (illustrative exhibit B) is burned before the altar usually on a stand, or suspended 15 or 25 feet above the floor.

The merchandise herein was classified as decorated glassware, pursuant to instructions from the Bureau of Customs following the decision in *J. Theofan & Co.* v. *United States*, Abstract 44268, decided September 9, 1940. We do not find the decision in the *Theofan* case, *supra*, controlling or pertinent in the decision of the present case.

The merchandise in that case consisted of red glass articles in the shape of a globe about 6 inches in diameter, used in connection with small cups in which water, oil, and a wick were placed, and used for religious purposes before pictures or statues of saints. The issue there before the court was whether they were dutiable as "illuminating articles," as classified (paragraph 218 (c), Tariff Act of 1930), or as decorated glass articles (paragraph 218 (f)). The court held them not to be illuminating articles and sustained plaintiff's claim that they were properly dutiable as decorated glassware (paragraph 218 (f)). Neither the opinion of the court nor the record in that case discloses of what the decoration consisted. In the case now before us the question of illuminating articles is not involved and the nature and extent of the embellishment considered to amount to decoration is not set forth.

Recourse to dictionary definitions indicates that to bring an article within the meaning of the term "decorated" or "ornamented," it must be increased in beauty by the addition of something becoming or ornamental. (Webster's New International Dictionary, 2d Edition, 1948; New Century Dictionary, Vol. 1, 1946 Edition.) The articles before us are not so embellished as to fall within the meaning of the above terms.

In *Koscherak* v. *United States* (N. Y. 1899), 98 F. 596, 39 C. C. A. 166, the court held that to bring glass bottles within paragraph 90, Tariff Act of 1894 (predecessor paragraph to paragraph 218, Tariff Act of 1930), which provided for such bottles "when cut, engraved * * * colored * * *, etched or otherwise ornamented or decorated," the cutting, engraving, etching, etc., thereon must be substantial and sufficient to amount to an ornament or decoration. The sample before us (exhibit 1) is a most potent witness. The lines which appear on the article do not amount to such ornamentation or decoration as would bring the articles within the provisions of paragraph 218. We hold that the plaintiff has overcome the presumption of correctness attaching to the collector's classification and has established, *prima facie*, that these imported containers are not decorated or ornamented.

With respect to the contention of the plaintiff that the articles are jars "suitable for use and of the character ordinarily employed for the holding or transportation of merchandise" we find the following definitions of the word "jar":

(Funk & Wagnalls New Standard Dictionary, 1942 Edition) jar, *n.* 1. A deep vessel of earthenware or glass, more or less cylindrical in shape, with no spout, and generally with a wide mouth * * *.

(The New Century Dictionary, 1946 Edition) jar, *n.* A broadmouthed earthen or glass vessel, commonly cylindrical in form * * *.

We are of opinion that the imported articles are jars within the ordinary definition of that term. There remains the question of

whether they are properly dutiable as jars "suitable for use and of the character ordinarily employed for the holding or transportation of merchandise" (paragraph 217, Tariff Act of 1930). In *Empire Laboratory Supply Co., Inc.* v. *United States*, 22 C. C. P. A. (Customs) 196, T. D. 47138, our appellate court pointed out with reference to the legislative history of paragraph 217, Tariff Act of 1922 (predecessor to paragraph 217, Tariff Act of 1930), that in the Summary of Tariff Information, 1929, compiled by the Tariff Commission for use of the Committee on Ways and Means of the House of Representatives, at page 504, the following appears:

\* \* \* The glass bottles and other glass containers covered by this paragraph *are the usual and ordinary glass containers* used for beverages, foodstuffs, chemicals, medicines, vaccines, antitoxins, and other commodities, such as scouring and cleansing creams, powders, polishes, and soaps. [Italics quoted.]

There is no evidence in this record to establish that these jars are "of the character *ordinarily* employed for the holding or transportation of merchandise," a requisite for classification under paragraph 217, Tariff Act of 1930. [Italics supplied.] These containers (exhibit 1), while used in shipping plaintiff's merchandise, are most extraordinary in design and are not "of the character ordinarily employed for the holding or transportation of merchandise." At best, it can be said that this is an unusual glass jar or container especially designed and constructed to hold and transport the plaintiff's special product alone. All glass jars used to ship merchandise do not hereby automatically become such as are *ordinarily* employed for such purpose. To fall within paragraph 217, the articles must be not only suitable for use for the holding or transportation of merchandise, but must also be of the character ordinarily employed for such purpose. In the case before us, while the imported glass containers hold and transport "merchandise," namely, the candle, the use of such containers involves something more than the commercial holding or transportation of merchandise. (*United States* v. *Julian Roberts, Inc.*, 23 C. C. P. A. (Customs) 300, T. D. 48166.) Their controlling use is in holding the candle while it is consumed in the sanctuary lamp (illustrative exhibit B). They are not jars "of the character ordinarily employed for the holding or transportation of merchandise." These open-end glass cylinders with special lugs and graduated indentations which confine their use to the patented sanctuary lamp (illustrative exhibit B) were obviously designed and manufactured for a definite purpose other than as a jar "ordinarily employed for the holding or transportation of merchandise."

The use of the article herein as a shipping container is incidental to its main or principal use as a holder for the candle when used in the sanctuary lamp. This particular glass container (exhibit 1) containing the candle "is inserted in that lamp in the center" (R. 11). These

containers are in fact fixed receptacles and, holding the candles as they do, perform a necessary function to accomplish the primary purpose of the unit, namely, its use as a sanctuary lamp.

The Mexican Trade Agreement, T. D. 50797, under which the plaintiff claims, does not contain the provision "suitable for use and of the character ordinarily employed for the holding or transportation of merchandise" found in paragraph 217 of the Tariff Act of 1930. A trade agreement cannot enlarge the operation of any designated tariff paragraph so as to make it include merchandise not originally covered thereby but must comprehend merchandise within the classification of the designated tariff paragraph. See *United States* v. *Canadian National Railways*, 29 C. C. P. A. 272, C. A. D. 202, and *Abercrombie & Fitch Co.* v. *United States*, 9 Cust. Ct. 336, C. D. 709. Accordingly, our finding is predicated upon a determination of whether the containers herein fall within the provisions of the designated paragraph of the act, namely, paragraph 217 of the Tariff Act of 1930. To be dutiable thereunder, they must be shown to be jars "suitable for use and of the character ordinarily employed for the holding or transportation of merchandise."

Upon the record before us, we find that while the plaintiff has overcome the presumption of correctness attaching to the collector's classification, it has failed to establish that the articles at bar are jars "suitable for use and of the character ordinarily employed for the holding or transportation of merchandise," as contemplated by the provisions of paragraph 217 of the Tariff Act of 1930. The protest is, therefore, overruled without affirming the action of the collector. Judgment will be entered accordingly.

DISSENTING OPINION

MOLLISON, Judge:   I thoroughly agree with the conclusion reached by my colleagues in this case that the glass articles here involved are neither decorated nor ornamented, and also with their conclusion that the said articles are jars within the ordinary meaning of that term. I am constrained to dissent, however, from the holding that the jars in question are not "suitable for use and of the character ordinarily employed for the holding or transportation of merchandise," for which reason alone the majority holds they are not classifiable under paragraph 217 of the Tariff Act of 1930.

The record shows that jars such as those before us are commonly and ordinarily used to hold and to transport a certain type of wax candle known as a "seven-day light." The jar containing the candle is designed to be inserted into a lamp wherein it is burned for religious purposes. After the candle has been consumed, the jar is discarded. The evidence shows that the experience of the manufacturer of the candles (the importer of the jars here in issue) was that because of

their nature as wax, considerable damage resulted to the candles from handling and temperature conditions when shipped without a protecting glass container. The majority apparently assumes that this experience was confined only to the one manufacturer of candles. On the contrary, besides the fact that the damage resulted *from the nature of the product* and thus could not have been confined to the particular manufacturer, there is evidence to establish that other manufacturers of candles of the type in question use a similar jar for the same purposes. Apparently the business is quite competitive, for it appears that the importer of the jars at bar also manufactures lamps in which the jar and candle are inserted for use, and so designed the lamps and jars that the similar jars of other manufacturers cannot be inserted in the lamps manufactured and sold by it.

I do not find the jars in issue to be "most extraordinary in design" as does the majority. Apparently the only feature which distinguishes them from similar jars made by other manufacturers is a fluting or indentation molded in the glass. The lamps sold by the importer herein have a lug on the inside (which is the subject of a patent) which fits into the indentation on the imported jars and prevents jars not having such an indentation from being used therein. This is, of course, a common device to insure renewal orders, but does not affect the character of the jars as "suitable for use and of the character ordinarily employed for the holding or transportation of merchandise." The requirement of the statute does not import uniformity of design or interchangeability of use—indeed, it is well-known that uniqueness of design and distinction from the products of others are much sought after by those who present their wares to the public in glass jars, presumably of the type intended to be covered by paragraph 217.

In my view, the case of *United States* v. *Julian Roberts, Inc.*, 23 C. C. P. A. (Customs) 300, T. D. 48166, cited by the majority, strongly supports the plaintiff's position herein. In that case, certain bowl-shaped articles of glass designed for holding talcum powder were held to be excluded from classification under paragraph 217 because of the proviso hereinbefore referred to on the ground that the evidence showed that they neither held nor transported talcum powder while in the channels of commerce, but were filled with powder by the ultimate consumer, the user. Here, the evidence shows that *as a commercial proposition* the candle and jar are combined at the factory and always sold and shipped together.

The mere fact that *besides* being ordinarily used for holding and transporting wax candles of the type described, the jars in issue are *also* used during consumption of the candles, does not deprive the jars of their original character as "suitable for use and of the character ordinarily employed for the holding or transportation of merchandise." We may take judicial knowledge of the fact that many, if not most,

of the jars that are ordinarily employed for holding or transporting merchandise such as the "beverages, foodstuffs, chemicals, medicines, vaccines, antitoxins, and other commodities, such as scouring and cleansing creams, powders, polishes, and soaps" (which are named in the excerpt from the Summary of Tariff Information, 1929, quoted in the majority opinion), are also used during consumption of the products contained therein.

With the statement from the Summary of Tariff Information before it, Congress must have enacted the proviso with the knowledge and understanding that the jars covered thereby had other uses besides holding or transporting merchandise. We are therefore not here concerned with any question of principal or controlling use. If in fact the jars are "suitable for use and of the character ordinarily employed for the holding or transportation of merchandise," they are entitled to classification under paragraph 217, regardless of whether they also have another use or uses.

It appears that the jars in issue hold more than 1 pint, and I am of the opinion that they squarely fall within the provisions of paragraph 217, as modified by the Mexican Trade Agreement, T. D. 50797, and that the protest claim should be sustained.