WILL & BAUMER CANDLE CO., INC. *v.* UNITED STATES (No. 4618)[1]

[1] C. A. D. 414.

United States Court of Customs and Patent Appeals, November 7, 1949

*John F. Nash* for appellant.
*David N. Edelstein*, Assistant Attorney General (*Richard F. Weeks*, special attorney, of counsel), for the United States.

[Oral argument October 7, 1949, by Mr. Nash and Mr. Weeks]

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, and JOHNSON, Associate Judges

GARRETT, Chief Judge, delivered the opinion of the court:

Appellant here seeks reversal of the judgment of the United States Custom Court, First Division, one judge dissenting, entered in conformity with the majority opinion, C. D. 1146 (21 Cust. Ct. 149), overruling the protest of the importer against the classification by the Collector of Customs at the port of Syracuse, New York, of certain containers composed of glass, hereinafter more particularly described.

The majority opinion states that the protest is "overruled without affirming the action of the collector." The dissenting judge agreed with the majority that the collector's classification was erroneous, but was of opinion that the protest should have been sustained.

The Government took no appeal. So, the non-approval by the trial court of the collector's classification is acquiesced in by counsel for the Government and is not before us for consideration.

Counsel for the Government suggest in their brief that classification under paragraph 230 (d) of the Tariff Act of 1930 "seems appropriate." The brief concedes, however, that the issue before the court "does not call for a ruling on that point."

So, we are concerned solely as to the applicability of paragraph 217 of the Act.

The merchandise, invoiced as "empty glass jars," was imported from Canada and was classified by the collector "in liquidation as decorated glassware under paragraph 218 (f), T. A. of 1930, and assessed with duty at the rate of 60%."

The claim of the protest relied on by the importer is that the articles are properly classifiable under paragraph 217 of the 1930 act as unfilled jars, wholly or in chief value of glass, not specially provided for, suitable for use and of the character ordinarily employed for the holding or transportation of merchandise, and, by reason of the provisions of the reciprocal trade agreement announced in T. D. 50797 (78 Treas. Dec. 190) assessed with duty at ½ cent per pound.

As we understand the record, appellant manufactures, sells, and ships a type of wax candle which is used ceremonially, or as a religious symbol, in churches or chapels. The trade name applied to the candle is "Sanctolite" and that name appears on the glass containers.

Certain exhibits introduced in evidence, taken in connection with the oral testimony, serve to illustrate the imported article and its uses. The following description is taken from the majority opinion of the trial court:

An official sample of the merchandise in question was received in evidence as exhibit 1. It consists of a cylindrical plain glass container, about 9½ inches in height and 2¼ inches in diameter, having a graduated depression or indentation in it running practically the entire length of the article. There are also two lugs or projections on the top rim. There is no stopper or covering used on this glass container. The trade name "Sanctolite" is molded or blown on the surface at the top. Below the name there are three vertical lines running parallel to each other approximately one-eighth of an inch apart. The two side lines are 3½ inches long and the center line 4½ inches, extending 1 inch below the other two lines. Beneath these lines, and almost touching the long center line, there appears in raised letters the following legend:

La Cie de Chandelles

Will & Baumer Tee.

Candle Co. Ltd.

Montreal, Can.

The name "Sanctolite" is used to designate a candle (plaintiff's illustrative exhibit A) which is inserted into the imported glass container or formed therein. The candle and the glass container are sold as a unit to churches and institutions throughout the United States for use in a sanctuary lamp. There was also received in evidence as an illustrative exhibit the patented red glass sanctuary lamp and stand in which the imported article, with candle, is inserted (illustrative exhibit B). There is a "lug" or bulge in the lower portion of the red glass lamp shell which fits into the indentation in the imported glass container (exhibit 1). A sample complete with candle was received in evidence (illustrative exhibit C) to illustrate the condition in which the imported glass articles are sold and used in this country.

The treasurer of the plaintiff corporation testified that originally the "Sanctolite" candles (illustrative exhibit A) sold by his company were not shipped in these imported glass containers but were shipped in wooden or cardboard cases; that due to high temperature and handling, the candles often became damaged and out of shape; and that the company had a great number of claims against it as a result of that method of shipment. He testified that to rectify such conditions his company had developed the glass container before us for holding and shipping these candles to its customers. The container and candle are used as a unit and inserted in the sanctuary lamp. The testimony would indicate that the importer's customers

discarded the glass container (exhibit 1) after the candle was consumed. The imported glass container complete with the candle filler is sold as a "Sanctolite" as one article. Neither the candles nor the glass containers are ever sold separately (R. 15). The witness explained that the "lug" in the red sanctuary lamp (illustrative exhibit B) prevents the insertion in it of any container other than the type of container before us (exhibit 1), which has a graduated indentation or groove permitting the "lug" to slide into it. He further testified that the three lines beneath the word "Sanctolite" on the glass container mean nothing to his company and that he did not know whether they were on the specifications given the manufacturer. The witness stated that, in his opinion, these three lines do not ornament the container to any extent and that the lines and words on the container cannot be seen when the candle is burning, since the sanctuary lamp (illustrative exhibit B) is burned before the altar usually ón a stand, or suspended 15 or 25 feet above the floor.

The reciprocal trade agreement embraced in T. D. 50797, *supra*, modified paragraph 217 of the Tariff Act of 1930 only as to the rate of duty, ½ cent per pound being substituted for 1 cent per pound. The proviso of the paragraph was not affected by the agreement. So, the here pertinent phraseology of the paragraph with the modified rate substituted reads:

Par. 217. * * * jars * * * wholly * * * of glass, * * * unfilled * * *: If holding more than one pint, ½ cent per pound * * *: *Provided*, That the terms * * * "jars," * * * as used herein, shall be restricted to such articles when suitable for use and of the character ordinarily employed for the holding or transportation of merchandise * * *. (Italics quoted)

Our sole concern here is whether the involved jars fall within the meaning of the phraseology so quoted, and the determination of that question depends upon the meaning which attaches to the language of the proviso.

It is apparent that the candles, which constitute the merchandise that is held and transported in the jars, are of a somewhat different shape and size from ordinary candles.

In the majority opinion of the trial court it is said, *inter alia:*

* * * At best, it can be said that this is an unusual glass jar or container especially designed and constructed to hold and transport the plaintiff's special product alone. All glass jars used to ship merchandise do not thereby automatically become such as are *ordinarily* employed for such purpose. To fall within paragraph 217, the articles must be not only suitable for use for the holding or transportation of merchandise, but must also be of the character ordinarily employed for such purpose. In the case before us, while the imported glass containers hold and transport "merchandise," namely, the candle, the use of such containers involves something more than the commercial holding or transportation of merchandise. (Italics quoted)

It seems to us that the construction placed upon the proviso by the majority of the trial court requires that containers, in order to meet its meaning, must be adapted to a broader use than its terms contemplate.

The candles which are "held or transported"—in the instant case they are both held *and* transported—certainly are merchandise, although they are designed for a special use. The containers themselves, the only articles whose classification is of concern here, are certainly suitable for use in holding the candles and for transporting them, and they are in fact ordinarily so used by appellant. Indeed, they appear to have been developed for those precise uses. They ordinarily hold the merchandise before it is sold and hold it while it is being transported to the purchaser, thus meeting both alternatives designated in the proviso.

We do not think that in order to fall within the meaning of the phraseology of the proviso the containers are required to be of a kind suitable to be used and ordinarily used in holding or transporting *all kinds* of candles. Where a special type of such merchandise exists and a specially designed container is made and used for holding or transporting it, we think the requirement of the statute is met, provided, of course, the container meets the statutory requirements in other respects.

It appears to have been the view of the majority of the trial court that "the *controlling* [italics ours] use [of the jars] is in holding the candle while it is consumed in the sanctuary lamp," and the decision of this court in the case of *United States* v. *Julian Roberts, Inc.*, 23 C. C. P. A. (Customs) 300, T. D. 48166, 69 Treas. Dec. 353, is cited. In that case, which arose under the Tariff Act of 1922 (the proviso of paragraph 217 of which was identical with the proviso here involved), the articles involved were glass bowls or jars which were found to be used for holding talcum powder *after* they had passed into the hands of individual purchasers but not used in transporting the powder.

We there said:

* * * we do not think the term merchandise, as used in the paragraph, means articles and commodities when in the hands of the ultimate consumer for personal as distinguished from commercial use.

Under this view of the meaning of the word "merchandise," as used in the proviso of paragraph 217, we think it must be held that the evidence in this case is not sufficient to show that the involved articles are "suitable for use and of the character ordinarily employed for the holding or transportation of merchandise."

We adhere to that ruling, but we are unable to agree that the "controlling use" of the jars here involved is in holding the candle while it is consumed in the sanctuary lamp.

A decision more nearly in point is that of this court in the case of *United States* v. *Richard Hudnut*, 15 Ct. Cust. Appls. 463, T. D. 42646, 53 Treas. Dec. 272, which also arose under the Tariff Act of 1922 and involved decorated talcum powder jars which the collector had classified under paragraph 218 of the 1922 Act and which were claimed under paragraph 217 thereof. The evidence in that case established that the jars were imported empty and filled with talcum

powder after importation and that after being so filled they were fitted with brass sprinkler or shaker tops, the perforations in which might be opened or closed at will by means of slides, the tops being so contrived and fitted that they could not be removed without injury to them and the jars. The jars were usable by the individual owner after the talcum powder was in the hands of the consumer, but such use was not regarded as a controlling use and, because it was found that they were suitable for use, and actually used, for holding and transporting talcum powder while the powder was in the commercial stage, we affirmed the holding of the United States Customs Court classifying them under paragraph 217, the proviso of which was the same as the proviso here involved. It is improbable that that particular type of jar was the only receptacle then in use for transporting talcum powder, but it was the view of the court that they fell within the meaning of "ordinarily employed" as that phrase is used in the proviso.

It is not intended to hold that the *Hudnut* case, *supra,* is on all fours with the instant case in every respect, but, upon the construction of the proviso involved, the reasoning there seems analogous and persuasive here.

For the reasons indicated we hold the jars properly classifiable under paragraph 217, and the judgment of the trial court, therefore, is *reversed* and the cause is *remanded* for further proceedings in conformity with this decision.

JOHNSON, Judge, dissents.

By reason of illness, HATFIELD, Judge, was not present at the argument of this case and did not participate in the decision.