(C.D. 2478)

EDWARD P. PAUL & CO., INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided September 1, 1964)

*Barnes, Richardson & Colburn* (*James H. Lundquist* of counsel) for the plaintiff.

*John W. Douglas,* Assistant Attorney General (*Mollie Strum,* trial attorney), for the defendant.

*Sharretts, Paley & Carter* (*Eugene F. Blauvelt* and *Gail T. Cumins* of counsel) as *amicus curiae.*

Before OLIVER and WILSON, Judges

OLIVER, Chief Judge: These four protests relate to certain items of glassware, imported from Italy in 1959, which were classified as glass articles, not specially provided for, of the kind or class provided for in paragraph 218(f) of the Tariff Act of 1930, as modified by T.D. 51802, carrying a dutiable assessment of 50 cents on each article, but not less than 30 per centum ad valorem nor more than 50 per centum ad valorem. Plaintiff claims that the merchandise is properly dutiable at 25½ per centum ad valorem under the provision in paragraph 218(f), as modified by T.D. 54108, for articles "commercially known as bubble glass and produced otherwise than by automatic machine (except if cut or engraved and valued at not less than $1 each)."

Samples of the items in dispute were received in evidence and are identified herein as follows:

| Protest | Entry | Item | Description | Exhibit |
|---------|-------|------|-------------|---------|
| 61/5988 | 1009174 | 3636 | Vase | 1 |
| 61/5988 | 1009174 | 2807 | Vase | 2 |
| 61/3841 | 974128 | 3224 | Vase | 3 |
| 61/688 | 933293 | 3093 | Long-stem vase | 4 |
| 61/688 | 933293 | 2614 | Vase | 5 |
| 61/20798 | 801069 | 3663 | Vase | 6 |
| 61/688 | 956546 | 3091 | Bowl | 7 |

Following the introduction of the samples, as set forth in the foregoing tabulation, and before offering any testimony, counsel for the respective parties stipulated that "Exhibit 3, a green yo-yo vase, * * *, and Exhibit 5, the smoked vase, and Exhibit 6, the amethyst vase, are blown glass articles and utensils not cut or engraved or produced otherwise than by automatic machine and that said exhibits are in fact bubble glass," and that "Exhibit 4, the smoked vase on a clear, long glass stem, has a bowl containing the characteristics of bubble glass," and that "the stem and the foot are clear or what is known in the trade as crystal glass." (R. 22–24.)

The stipulation between the parties that the vases (exhibits 3, 5, and 6, *supra*), are "in fact bubble glass," and that the bowl of the smoke vase (exhibit 4, *supra*), contains "the characteristics of bubble glass," does not supply a sufficient factual basis to establish, *prima facie*, that the present merchandise is properly classifiable as claimed by plaintiff. Divergent views concerning the glassware in question, expressed by witnesses for both parties, as set forth in the following detailed review of the record, serve to emphasize that the agreement between counsel falls far short of supporting a legal conclusion favorable to plaintiff's position. We proceed, accordingly, with analysis of the evidence adduced by both parties.

Four witnesses testified on behalf of plaintiff. The president of the plaintiff corporation stated that he has been engaged in the glassware business for 47 years, that his experience—exclusively with plaintiff—has included the purchase, sale, and manufacture of glassware, and that he has been importing glassware since 1932 from "Italy, Germany, and all over the world." (R. 11.) He observed glassware, such as the vases (plaintiff's exhibits 1 and 2), and the long stem vase (plaintiff's exhibit 4), being manufactured in the factories in Italy. Describing the manufacture of such articles, he stated that the glass is made in a pot. It is glass of the poorest quality, consisting of 75 per centum sand, 15 per centum soda ash, and 10 per centum lime. An oxide is added when colored glass is being produced. The liquid glass is drawn by hand into a wooden mold of the

shape of the finished article. The stem and the base of the vase, exhibit 4, *supra*, are made separately; "they are fused together afterwards, and just put it together, all handmade." (R. 29.) Referring to the items under consideration, the witness stated, on direct examination, that he sold such merchandise in the wholesale markets of the United States, as bubble glass, not cut or engraved, and not produced by automatic machine. Under cross-examination, he testified that such merchandise was always sold by item number and description and that it was never sold under the designation, "bubble glass."

Plantiff's second witness stated that he has been an importer of glassware and other products for 40 years, that he first became familiar with the term, "bubble glass," during the war period, between 1940 and 1945, when he imported from Mexico a product known to him as bubble glass, and that the merchandise imported at that time was similar to, but of poorer quality and workmanship, than the merchandise involved herein. He stated further that, while the present merchandise is known in the wholesale trade of the United States as bubble glass, he would never use the term in his catalog because "we are ashamed of it," and "because we have problems with people who look at these, our customers." (R.66.)

The third witness who appeared on behalf of plaintiff has been an importer for 30 years of earthenware and glassware, including articles such as those involved herein. He testified that the items in question (exhibits 1 to 7, *supra*), are bubble glass "because of the inferior quality, because of the numerous bubbles, seeds, and other imperfections in the glass itself." (R. 68.) Throughout his experience, since 1926, articles, similar to the present merchandise, were "generally considered" as bubble glass. Although he bought items similar to those under consideration as bubble glass, he never used the term in the sale thereof, but always referred to them by description and item number. In answer to a question by the court, the witness stated that he considered all handmade glass, regardless of color, having bubbles, seeds, flaws, and imperfections, to be bubble glass.

Plaintiff's final witness merely identified an article (plaintiff's illustrative exhibit 8) on which he paid duty as bubble glass.

We turn now to the evidence offered by defendant, whose first witness has been an importer for 33 years of handicrafts, chiefly from Mexico, including bubble glass which he continues to import in substantial quantities and sells throughout the United States. The witness testified that he became familiar with bubble glass in 1929 and that he began importing it in 1930. He stated that the term, "bubble glass," originated with an importer in El Paso, Tex., during the late 1920's, who advertised "this same kind of glass that we have been

importing quite extensively in the 1930's as bubble glass." Based upon his personal observation of the manufacture of bubble glass in Mexico, the witness described the process as follows (R. 89):

The work is done in a way that glass was blown in this country and other parts of the world prior to modern improvements. They have small ovens; they have the glass mix in the oven. There are openings in the oven, and a glass blower will insert his blowing stick or pontee, and remove a certain amount of glass which he deems sufficient for the object he is to make; takes it out and begins to blow through the metal tube and infuse air into it, and there are a good many times when he will put it back for rewarming, get the right temperature. He rolls it and shapes it with the calipers, blows it, and finally it is broken off the stem and taken by an assistant and put in an annealing oven.

The witness testified further that bubble glass is produced through a definite or specific process of manufacture, that it is not a kind or grade of glass resulting as waste from the manufacture of good quality glass, that the bubbles and imperfections appearing therein "come about through the general process of the way it is made," and that the mere presence of one or two tiny bubbles in glassware would not make the article or product commercially known as bubble glass. Samples of Mexican glassware, which the witness identified as items commercially known in the United States as bubble glass, were received in evidence, i.e., tumblers (defendant's collective illustrative exhibits A-1 and A-5), goblets (defendant's collective illustrative exhibits A-2 and A-6), pitchers (defendant's collective illustrative exhibits A-3 and A-4), and a decanter (defendant's collective illustrative exhibit A-7). After examining the items in question (plaintiff's exhibits 1 to 7, *supra*), the witness stated that the articles do not have the general appearance of bubble glass and that if he placed an order for bubble glass he would not expect to receive merchandise such as the items involved herein.

Defendant's second witness stated that he is engaged in the sale of decorative accessories, including glassware like the present merchandise (exhibits 1 to 7, *supra*). He testified that the articles in question are not bubble glass; he characterized them as "sophisticated" or "refined" glassware, superior in quality and in workmanship over the Mexican bubble glass (defendant's collective illustrative exhibits A-1 to A-7, *supra*), which is made in a batch operation from glass that has "many, many impurities" (R. 111) and produced in a crude and primitive manner by poor workmanship, resulting in no continuity in shape of the completed article. The presence of bubbles does not necessarily create bubble glass, particularly when bubbles develop during the blowing of the glass and are not the result of the batch of glass prepared for the production of bubble glass.

The third witness, who testified on behalf of defendant, stated that

he has been a manufacturer for 30 years of handmade table glassware and accessories, that he has manufactured articles similar to the items in question, which he described, based on their shape, form, and general quality of glass, as decorative glassware and not within the class of merchandise commercially known as bubble glass. Referring to the presence of bubbles in glassware, the witness testified as follows (R. 119):

Bubbles in glass are something that anyone engaged in the glass business has had to contend with since the beginning of time. There are very few pieces of glass that if examined closely enough would not produce some slight imperfection if you were looking hard enough.

Testifying concerning the term, "bubble glass," with which he became familiar "in the middle '30's" (R. 121), the witness stated that "at that time bubble glass and Mexican glass were more or less synonymous." Differentiating between the present merchandise and bubble glass, the witness further testified that the items in question (exhibits 1 to 7, *supra*), are superior in the quality of the glass and in the grade of workmanship over the articles of bubble glass (collective illustrative exhibits A–1 to A–7, *supra*). The bubble glass, by its variety of imperfections, including bubbles, reflects the use of crude facilities and tools in the production thereof.

Defendant's fourth witness was a domestic manufacturer of glassware whose 40 years' experience included the manufacture and sale of merchandise such as the articles involved herein. His familiarity with the term, "bubble glass," began in the 1930's, when the term was used synonymously with Mexican glass. Producing bubble glass is a batch operation as distinguished from a continuous operation. The witness characterized the present merchandise (exhibits 1 to 7, *supra*), as "refined glass" that may have an occasional bubble which "is undoubtedly true" in any glass. The articles of bubble glass (collective illustrative exhibits A–1 to A–7, *supra*), show a preponderance of bubbles and unmelted material that make a poorer quality of glassware than the items in question.

The final witness for defendant was a manufacturer of table glassware and decorative accessories, both hand-molded and blown, who also sold the merchandise throughout the United States. His 35 years' experience included the manufacture of glassware, such as the articles in question, which, he stated, are not bubble glass, but are refined glassware, composed of good quality glass and the products of good workmanship. He became familiar with bubble glass, such as the articles in evidence (defendant's collective illustrative exhibits A–1 to A–7), in 1932, when the term used was "bubble glass," "Mexican glass," or "Mexican bubble glass." Based on his observation of the manufacture of bubble glass in Mexico, he stated that the glass factory

had the crudest facilities, that bubble glass, composed basically of sand, is manufactured to have a "texture appearance of bubbles, unmelted batch material," (R. 144) and that to induce the various defects in the finished glassware, unmelted material is added to the batch of glass being processed. Explaining why the presence of a few bubbles in glassware would not necessarily make it bubble glass, the witness stated that "no one has ever made a perfect piece of glass. You can always find a bubble or a streak or a stria." (R. 146.)

The samples in evidence lend support to defendant's testimony. Samples are potent witnesses. *United States* v. *Fred Gretsch Mfg. Co., Inc.*, 28 CCPA 26, C.A.D. 120. Examination of the present merchandise shows there are a few isolated bubbles in some of the items; in others, no bubbles are discernible. The articles have the appearance of superior quality glassware, and each is a highly attractive item when viewed with the articles of bubble glass (collective illustrative exhibits A–1 to A–7, *supra*), that are crudely manufactured pieces containing numerous bubbles scattered at random throughout the article and reflecting generally low quality merchandise.

Paragraph 218(f) of the Tariff Act of 1930, as originally enacted, reads as follows:

Table and kitchen articles and utensils, and all articles of every description not specially provided for, composed wholly or in chief value of glass, blown or partly blown in the mold or otherwise, or colored, cut, engraved, etched, frosted, gilded, ground (except such grinding as is necessary for fitting stoppers or for purposes other than ornamentation), painted, printed in any manner, sandblasted, silvered, stained, or decorated or ornamented in any manner, whether filled or unfilled, or whether their contents be dutiable or free, 60 per centum ad valorem.

It will be observed that the foregoing paragraph contains no specific provision for bubble glass. A separate provision for merchandise "commercially known as bubble glass, if produced otherwise than by automatic machine," was enacted, for the first time, as a modification of said paragraph 218(f), under the trade agreement with Mexico (T.D. 50797). The same provision was included in the modification of paragraph 218(f), *supra*, in the General Agreement on Tariffs and Trade (T.D. 51802), and subsequent protocols thereto (T.D. 52739, T.D. 53865, and T.D. 54108). In all of the legislation referred to modifying paragraph 218(f) of the Tariff Act of 1930, the statutory provision covering bubble glass was the same; only the dutiable rate varied, being a reduction from the basic rate of 60 per centum ad valorem provided for in the original paragraph.

It is well settled that the modification of a paragraph of the Tariff Act of 1930, under the terms of a trade agreement, contemplates only a change or a modification in the rate of duty on merchandise already embraced within the scope of the paragraph so modified. *Aber-*

*crombie & Fitch Co.* v. *United States*, 9 Cust. Ct. 336, C.D. 709; *United States* v. *Canadian National Railways*, 29 CCPA 272, C.A.D. 202. It, therefore, follows that the all-comprehensive provisions of paragraph 218(f) of the Tariff Act of 1930, embracing, as they do, "all articles of every description not specially provided for, composed wholly or in chief value of glass," included therein articles and utensils commercially known as bubble glass.

It is a well-settled principle in customs litigation that the plaintiff in a classification case has the twofold burden of not only showing that the collector's classfication is erroneous but also of proving the correctness of the claimed classification. Our appellate court, in *Atlantic Aluminum & Metal Distributors, Inc.* v. *United States*, 47 CCPA 88, C.A.D. 735, expressed the principle as follows:

It is axiomatic that a presumption of correctness attaches to the collectors classification. *Lowenthal Trimming Corp.* v. *United States*, 39 CCPA 149, C.A.D. 477; *McKesson & Robbins, Inc.* v. *United States*, 27 CCPA 157, C.A.D. 77. To overcome this presumption, the protestant has the burden of proving not only that the collector erred, but also that the classification urged by the protestant is correct. *W. T. Grant Company* v. *United States*, 38 CCPA 57, C.A.D. 440; *United States* v. *Good Neighbor Imports, Inc.*, 33 CCPA 91, C.A.D. 321; *United States* v. *Fred Gretsch Mfg. Co., Inc.*, 28 CCPA 26, C.A.D. 120.

The testimony adduced by both parties has been set forth in considerable detail to show, as graphically as possible, the factual situation before us. In our judgment, plaintiff has failed to sustain its twofold burden as enunciated in the cited authorities.

The preponderance in weight of the evidence herein—oral testimony coupled with the sets of samples hereinabove discussed—establishes that bubble glass, as commercially so known, is produced in a batch operation; that crude manufacturing techniques and unrefined raw materials are used to obtain or acquire the desired low-grade glassware, containing a variety of imperfections, that include numerous bubbles as well as seeds and striae, as shown in the Mexican bubble glass (defendant's collective illustrative exhibits A–1 to A–7); that the articles in question (plaintiff's exhibits 1 to 7) are materially different, in texture and general appearance from the said items of bubble glass; that the present merchandise is superior or refined glassware; and that it is not within the class or kind of merchandise commercially known as bubble glass.

On the basis of the present record and for all of the reasons heretofore set forth, we hold the items of glassware in question, as hereinabove identified, to be properly classifiable as glass articles, not specially provided for, of the kind or class provided for in paragraph 218(f) of the Tariff Act of 1930, as modified by T.D. 51802, and dutiable at 50 cents each, but not less than 30 per centum ad valorem nor more than 50 per centum ad valorem, as assessed by the collector.

The protests are overruled and judgment will be rendered accordingly.