(C. D. 1169)

GEO. S. BUSH & CO., INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided March 31, 1949)

Lawrence, Tuttle & Harper (George R. Tuttle of counsel) for the plaintiff.
David N. Edelstein, Assistant Attorney General (William J. Vitale, special attorney), for the defendant.

Before TILSON, EKWALL, and MOLLISON, Judges

TILSON, Judge: This suit against the United States involves the proper classification of certain merchandise invoiced as "6 only Power Chain Saws," exported from Vancouver, B. C., and entered at Seattle, Wash., on October 30, 1945. The merchandise was entered and classified as machines, not specially provided for, under paragraph 372 of the Tariff Act of 1930, and duty was levied thereon at the rate of 27½ per centum ad valorem. Various claims were made in the protest as originally filed, but at the trial counsel for the plaintiff abandoned all claims except that the merchandise is properly dutiable at 15 per centum ad valorem under paragraph 340 of the Tariff Act of 1930, as amended by the trade agreement with Sweden, T. D. 47785, as:

Crosscut saws, finished or further advanced than tempered and polished, hand, back, and other saws, not specially provided for, valued over 5 cents each.

Incidentally the merchandise was entered and appraised at a value of $180 each, or a total of $1,080 for the six articles.

The provision in paragraph 372 of the Tariff Act of 1930 under which classification was made in this case is as follows:

* * * all other machines, finished or unfinished, not specially provided for, 27½ per centum ad valorem: * * *

At the trial counsel for the plaintiff stated that:

* * * In presenting the case, plaintiff relies upon the common meaning of the word "saws." Also, we rely, Your Honor, upon the fact that that language, saws, or, all other saws, is a designation by use * * *.

In the interest of accuracy, it should be stated that the provision under which plaintiff is claiming is not all other saws, but simply "other saws."

At the trial, counsel for the plaintiff offered the testimony of two well-qualified witnesses, and in line with counsel's statement at the commencement of the trial, that testimony was directed primarily to the common meaning of the word "saws," as understood by the two witnesses, and the use to which the involved merchandise was put.

A sample of the merchandise was marked in evidence as exhibit 1, and is now before us for our examination, inspection, and considera-

tion. Plaintiff also offered in evidence a folder which was marked illustrative exhibit A; also seven folders which were marked collective illustrative exhibit B, which were later marked collective exhibit 2; and two newspaper clippings, one marked illustrative exhibit C and the other marked illustrative exhibit D; exhibit C depicts a "One Man Drag Saw" and exhibit D depicts a "3-Wheel Band Saw."

Counsel for the defendant offered and there was received in evidence as exhibit 3, a catalog describing and illustrating the "P. M. Wood-boss"; also illustrative exhibit E, which is a catalog issued by E. C. Atkins & Co., and illustrative exhibit F, which is a Pacific Coast Edition No. 37, by SIMONDS, describing and illustrating saws, knives, files, and steel.

On page 1 of exhibit 3, which is a catalog issued by Power Machinery, Ltd., the exporter of the merchandise herein, under the heading SPECIFICATIONS, appears the following:

Motor—Single cylinder—2 cycle—air cooled.
Power—4 H. P. at 3800 R. P. M. (Normal Cutting Speed) (B. B. H. P. 2.5).
Cylinder—Cast nickel grey iron.
Crankshaft—Forged and heat-treated. Alloy steel. Precision machined and ground.
Connecting Rod—Forged alloy steel—heat-treated. Bronze bearings.
Piston—2″ Bore; 1¾″ Stroke; Aluminum Alloy. Heat-treated.
Ignition—Flywheel type, high tension magneto with built-in blower. Well known standard make.
Carburetor—Float type—Standard make.
Lubrication—Mixed with gasoline.
Cylinder Head—Aluminum Alloy. Finned for extra cooling.
Main Bearings—Ball Bearings—Standard precision made.
Gasoline Tank—Cast Magnesium—1 quart capacity.
Net Weight—14 inch—35 lbs.; 20 inch—36 lbs.; 26 inch—37 lbs.
Guide Bar—Alloy Steel—Heat-treated.
Cutting Chain—Alloy Steel—Heat-treated.
General Construction—Cast magnesium used for all castings except cylinder block and those few pieces where hard-wearing bearing surfaces are required.
Starting Pulley—Automatic Recoil.

Counsel for the plaintiff described the imported merchandise as follows:

The imported saw is represented by exhibit 1 and, as appears therefrom and from the testimony, it is powered by a small gasoline engine which rotates a chain around two edges and the end of a rigid metal plate which is known as the cutter bar, causing the teeth in the chain to cut out the kerf. As demonstrated by the witness McDonald, the saw is portable and, as said by him:

The use was confined almost entirely to that of cutting wood, sawing trees and cutting it up into proper-sized lengths.

Also, when used to cut standing trees, it is held with the cutting bar in a flat position; and when used to cut fallen timber or logs, the cutting bar is held horizontal.

Thus, from an inspection of the importation as represented by exhibit 1 and from the testimony referred to above, there can be no doubt that the function of this article and its use is as a saw. Therefore, the only issue of consequence is whether a portable power-driven saw is within the language of paragraph 340, *supra*, "all other saws."

Counsel for the defendant, in his brief filed herein, describes the imported merchandise as follows:

\* \* \* Each article consists of an internal combustion engine with projecting handles and a light base frame-work mounted thereon. One end of an elongated steel plate known as a cutter-bar is rigidly mounted on the base of the engine at a right angle to the crank-shaft. The grooved or slotted edge of this plate or bar is traversed by an endless flexible chain, the links of which are formed with lugs which project into the grooves or slots and with alternating cutter and raker teeth which project outwardly therefrom. The chain is driven by a sprocket and clutch mounted on the engine crank-shaft. The cutting chain is a relatively complicated assembly of link segments, cutting teeth and pins. In use the stationary cutter-bar and moving chain are held by the operator in contact with a wooden object, producing a cutting action similar to a band-saw: It is used chiefly by woodsmen in felling trees and cutting them into logs. It is also used in timber construction work.

In addition to the testimony of the two witnesses as to the common meaning of the term "saw," heretofore alluded to, counsel for the plaintiff in his brief filed herein, quotes the following dictionary definitions of that term—

Webster's New International Dictionary:

saw 1. A tool or instrument, consisting essentially (usually) of a thin flat blade or plate of tempered steel with a continuous series of teeth on the edge, used for cutting wood, metal, bone, etc. \* \* \*

2. Any of various analogous tools or devices without teeth, which cut by wearing out a kerf; as: **a** A thin, smooth blade of soft iron, fed with sharp sand and water, for cutting stone. **b** A soft steel disk revolved at high speed to cut armor plate, etc. \* \* \*

3. A tool or machine having a saw (senses 1 and 2) for cutting; as, a circular, jig, or wood *saw*.

dragsaw A saw the teeth of which are slanted so as to cut on the pulling stroke; specif., a large power-operated saw for sawing felled trees.

band saw A saw in the form of an endless steel belt, running over pulleys; also, a power sawing machine using this device.

The 1942 edition of the Standard Dictionary defines a "saw" as:

2. A machine for operating a saw or gang of saws; as, a jig-*saw*.

The 1895 edition of the Standard Dictionary defines a "saw" as:

2. A machine for operating a saw or gang of saws; as a jog-*saw*.

The New Century Dictionary defines "saw" as follows:

saw A tool or device for cutting, consisting typically of a thin blade or plate of metal, usually steel, armed on the edge with sharp teeth; such a device together with its handle or frame; a machine operating such a device.

It will thus be seen that the testimony of the two witnesses herein as to the common meaning of the term "saw" is in agreement with the dictionary definitions of that term, as set out above. However, it should be remembered that the common meaning of a tariff term is not a question of fact, but a question of law. *United States* v. *Florea*, 25 C. C. P. A. 292; *United States* v. *Shalom*, 33 C. C. P. A. 29. It is also well-settled that the courts are bound to take judicial notice of the common meaning of tariff terms, and that while dictionaries and lexicographic authorities may be consulted by the courts as to the common meaning of tariff terms, they are in no sense to be considered as evidence but only as aids to the memory and understanding of the courts. On this point the following is quoted from *Nix* v. *Hedden*, 149 U. S. 304 (37 Law. Ed. 745):

There being no evidence that the words "fruit" and "vegetables" have acquired any special meaning in trade or commerce, they must receive their ordinary meaning. Of that meaning the court is bound to take judicial notice, as it does in regard to all words in our own tongue; and upon such a question dictionaries are admitted, not as evidence, but only as aids to the memory and understanding of the court. *Brown* v. *Piper*, 91 U. S. 37, 42 [23: 200, 201]; *Jones* v. *United States*, 137 U. S. 202, 216 [34: 691, 697]; *Nelson* v. *Cushing*, 2 Cush. 519, 532, 533; *Page & Fawcet's Case*, 1 Leon, 242; Taylor, Ev. (8th ed.) §§ 16, 21.

   \*       \*       \*       \*       \*       \*       \*

\* \* \* Beyond the common knowledge which we have on this subject, very little evidence is necessary, or can be produced. *Robertson* v. *Salomon*, 130 U. S. 412, 414 [32:995].

Of like import is the following pronouncement in *Sonn* v. *Magone*, 159 U. S. 417:

\* \* \* The interpretation of words of common speech is within the judicial knowledge and matter of law. *Marvel* v. *Merritt*, 116 U. S. 11; *Nix* v. *Hedden*, 149 U. S. 304; *Cadwalader* v. *Zeh*, 151 U. S. 171; *Saltonstall* v. *Wiebusch*, 156 U. S. 601.

Counsel for the plaintiff, in his brief filed herein, admits that exhibit 1 is a machine with a saw for cutting, but contends, nevertheless, that it is properly classifiable as a saw under said paragraph 340, as amended, "just as the machine dragsaws and band saws are 'saws.'" It is true that Webster defines a "dragsaw" in part as "a large power-operated saw for sawing felled trees," but this in no way suggests that the power operating such a dragsaw is to be considered as the saw or any part thereof.

A steam engine might be used to furnish power for the operation of a large cotton gin, a gristmill, a flour mill, a sawmill, a planing machine, a ripsaw, a cut-off saw, a gang saw, a mill saw, a dragsaw, and a steel band saw, and yet it could not be contended that this steam engine, with its numerous and intricate parts, should be classified as a cotton gin, as a gristmill, as a flour mill, as a sawmill, as a

planing machine, as a ripsaw, as a cut-off saw, as a gang saw, as a mill saw, as a dragsaw, or as a steel band saw.

A careful consideration of paragraph 340, which might well be denominated the "saw" paragraph, convinces us that in enacting this paragraph the Congress intended to provide therein for saws, as such, and that it was never the intention of the Congress to include therewithin the mechanisms and power necessary in the operation of such saws. Certainly, there is nowhere to be found any suggestion that the Congress had any intention of providing for machines of any kind in said paragraph 340.

Whether or not the cutter bar and cutter chain, if imported separate and apart from the other mechanism, would be classifiable under said paragraph 340 or under said paragraph, as amended, we need not here decide, because there is no claim that the imported merchandise is properly dutiable other than as an entirety. Moreover, the construction of the sample before us strongly indicates that it was intended for use, and usable, only as an entirety.

Paragraph 340 of the Tariff Act of 1930, as originally enacted, provided *eo nomine* for both manually operated saws and power, operated saws. However, when the trade negotiators came to carve out of said paragraph 340 the provision under which plaintiff makes claim in this case, they were careful to include *eo nomine* within that provision only manually operated saws, to wit: Crosscut saws, hand saws, and back saws. The highly complex mechanism here involved is not of the same kind as those saws specifically enumerated. We are unable to see anything in common between them. In measuring the applicability of the language of said trade agreement, under which the plaintiff claims, to the imported apparatus, we must have in mind whether the imported apparatus is of the type or types named in said trade agreement. The particular saws which are named in the said trade agreement as exemplars, are devices which are operated manually, and which are able to function only when manually operated. The exact opposite is true with reference to the sawing machines now under consideration. The cutter chain in the present importation is able to function and operate only when it has applied thereto the power generated by the gasoline motor which is an inseparable part of the importation. It is therefore clear that the sawing machines here involved are not covered by and included within the provision for "* * * and other saws, not specially provided for, * * *" contained in said trade agreement. *John A. Steer & Co.* v. *United States*, 24 C. C. P. A. 293.

At no time during their examination did either of the two witnesses refer to or designate the imported merchandise as merely a "saw," but always referred to it as "power chain saws," "P. M. Chain Saw," and "power chain saw."

X Q. When you refer to an article as a power chain saw, do you have in mind a blade and the mechanism attached to the blade or the blade attached to the mechanism?—A. I do.

Regardless of whatever else may be said about the imported merchandise, it is definitely more than a saw. It is a "sawing machine," and as such is provided for in paragraph 372 of the Tariff Act of 1930 as "all other machines, finished or unfinished, not specially provided for." While it is true that the Congress has made provision in paragraph 340 for power-operated saws, there is nothing to suggest that the Congress intended to include within and as a part of the provision for "saws" the machines which furnish the power for their operation, particularly when the saw *per se* is only an infinitesimal part of the entire mechanism. There is no provision in said paragraph 340 for sawing machines.

In other words, when the Congress made provision in paragraph 340 for mill saws, dragsaws, circular saws, and steel band saws, finished or further advanced than tempered and polished, it was providing for these articles as "saws," and not for such saws, plus the motive power or machines necessary to their operation, nor would one scarcely think of the Congress providing that the motive power for such saws should be "*   *   * finished or further advanced than tempered and polished."

Counsel for the plantiff in his brief suggests that typewriters, clocks, cameras, lathes, pumps, sewing machines, eggbeaters, and other household appliances do not cease to be typewriters, sewing machines, clocks, coffee grinders, merely by being devised for operation by springs, compressed air, electricity, gasoline engine, or other prime mover in lieu of muscular power. As was stated in *Lionel Trading Co.* v. *United States*, 15 Ct. Cust. Appls. 365: "This contention, however, assumes that the suggested classification is established. There is no proof relating to this matter in the record   *   *   *."

Based upon the description of the merchandise as set out in the decision, it would appear that the merchandise involved in *Mill & Mine Supply Co.* v. *United States*, 7 Cust. Ct. 168, C. D. 561, was very similar, if not identical, with the merchandise in this case. The court there observed:

It would seem, in view of such incorporation of a provision for gang saws in paragraph 372, that it was never the intention of Congress to include within the purview of said paragraph 340 such highly complex mechanisms as those involved in this importation. We are fortified in our conclusion by the language employed in said paragraph 340. After enumerating some of the kinds of saws contemplated therein, we find these qualifying words "finished or further advanced than tempered and polished," which could only apply to the blades of the saws contemplated by the paragraph.

This court held the merchandise in the above case to be properly dutiable as machines, not specially provided for, in paragraph 372,

and the Government carried the case to the Court of Customs and Patent Appeals. In its opinion, reported in 30 C. C. P. A. 128, our appellate court said:

The appellee filed no cross-appeal and is therefore not in a position to urge here the applicability of any paragraph of the said tariff act other than 372—the machine paragraph.

The issue for this court to determine, therefore, is whether or not the saws should be classified for duty under the third provision of said paragraph 353 and the guide bars under the last provision of that paragraph or whether they were properly classifiable under said machine paragraph 372.

In view of the issue presented to our appellate court in the above case, no indication is given in the opinion as to the proper construction of paragraph 340, with reference to sawing machines, like those here involved.

It is our view, however, and we so hold, that it was never the intention of the Congress to include within the provision for " * * * hand, back, and *all* other saws, not specially provided for, * * * " [italics supplied] in said paragraph 340, sawing machines like those here involved. It follows, therefore, that such sawing machines are not included within that portion of the trade agreement with Sweden, T. D. 47785, amending said paragraph 340. *United States* v. *Canadian National Railways*, 29 C. C. P. A. 272; *Abercrombie & Fitch Co.* v. *United States*, 9 Cust. Ct. 336, C. D. 709.

All claims of the plaintiff are, therefore, overruled, and the classification of the collector affirmed. Judgment will be rendered accordingly.