GEO. S. BUSH & CO., INC. *v.* UNITED STATES (No. 4627)[1]

United States Court of Customs and Patent Appeals, May 9, 1950

*Lawrence, Tuttle & Harper (Frank L. Lawrence, George R. Tuttle,* and *Lawrence A. Harper* of counsel for appellant.

*David N. Edelstein,* Assistant Attorney General (*Richard F. Weeks,* special attorney, of counsel), for the United States.

[Oral argument April 12, 1950, by Mr. Tuttle and Mr. Weeks]

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Associate Judges

---

[1] C. A. D. 435.

JACKSON, Judge, delivered the opinion of the court:

On October 30, 1945, appellant imported from Vancouver, Canada, at the port of Seattle, merchandise invoiced as "power chain saws." The merchandise was assessed with duty by the collector at 27½ per centum ad valorem pursuant to paragraph 372 of the Tariff Act of 1930 as "machines, finished or unfinished, not specially provided for." Appellant protested the classification of the collector on various grounds among which was that the imported goods were properly dutiable at the rate of 15 per centum ad valorem under paragraph 340 as amended by the Swedish trade agreement, T. D. 47785, as saws.

All of the claims in the protest were abandoned at the trial except that the imported merchandise is properly dutiable under pargraph 340. The pertinent parts of the involved paragraphs read as follows:

Par. 372. * * * all other machines, finished or unfinished, not specially provided for, 27½ per centum ad valorem; * * *.

Par. 340. Crosscut saws, mill saws, pit and drag saws, circular saws, steel band saws, finished or further advanced than tempered and polished, hand, back, and all other saws, not specially provided for, 20 per centum ad valorem; jewelers' or piercing saws, 40 cents per gross.

Paragraph 340 was modified by the said trade agreement as follows:

Mill saws, pit and drag saws, and steel band saws, finished or further advanced than tempered or polished_____12 percent ad valorem

Crosscut saws, finished or further advanced than tempered and polished, hand, back, and other saws, not specially provided for, valued over 5 cents each_____15 percent ad valorem

The United States Customs Court, Second Division, by judgment duly given overruled the protest in conformity with its decision, C. D. 1169 (22 Cust. Ct. 120). From the judgment this appeal was taken.

The question before the trial court and here is whether or not the imported merchandise is properly dutiable as "other saws" appearing in the trade agreement.

A sample of the merchandise in evidence shows it to be a portable tool designed to be operated by one man and is thirty-five pounds in weight. A clear description of such saw is quoted in the decision of the trial court from the brief of the Government, reading as follows:

* * * Each article consists of an internal combustion engine with projecting handles and a light base frame-work mounted thereon. One end of an elongated steel plate known as a cutter-bar is rigidly mounted on the base of the engine at a right angle to the crank-shaft. The grooved or slotted edge of this plate or bar is traversed by an endless flexible chain, the links of which are formed with lugs which project into the grooves or slots and with alternating cutter and raker teeth which project outwardly therefrom. The chain is driven by a sprocket and clutch mounted on the engine crank-shaft. The cutting chain is a relatively complicated assembly of link segments, cutting teeth and pins. In use the stationary cutter-bar and moving chain are held by the operator in contact with

a wooden object, producing a cutting action similar to a band-saw. It is used chiefly by woodsmen in felling trees and cutting them into logs. It is also used in timber construction work.

Two witnesses appeared on behalf of appellant who testified as to the common meaning of the word "saw," as understood by them, and the use to which the imported merchandise was put. Several paper exhibits comprising catalogs, illustrating saws, knives and other tools, were received in evidence.

In one of the exhibits, a catalog distributed by the exporter of the involved merchandise, the following specifications of the power chain saw appears:

Motor—Single cylinder—2 cycle—air cooled.

Power—4 H. P. at 3800 R. P. M. (Normal Cutting Speed) (B. B. H. P. 2.5).

Cylinder—Cast nickel grey iron.

Crankshaft—Forged and heat-treated. Alloy steel. Precision machined and ground.

Connecting Rod—Forged alloy steel—heat-treated. Bronze bearings.

Piston—2″ Bore; 1¾″ Stroke; Aluminum Alloy, Heat-treated.

Ignition—Flywheel type, high tension magneto with built-in-blower. Well-known standard make.

Carburetor—Float type—Standard make.

Lubrication—Mixed with gasoline.

Cylinder Head—Aluminum Alloy. Finned for extra cooling.

Main Bearings—Ball Bearings—Standard precision made.

Gasoline Tank—Cast magnesium—1 quart capacity.

Net Weight—14 inch—35 lbs.; 20 inch—36 lbs.; 26 inch—37 lbs.

Guide Bar—Alloy Steel—Heat-treated.

Cutting Chain—Alloy Steel—Heat-treated.

General Construction—Cast magnesium used for all castings except cylinder block and those few pieces where hard-wearing bearing surfaces are required.

Starting Pulley—Automatic Recoil.

The trial court quoted several definitions of the word "saw" and observed that the testimony of appellant's witnesses was in agreement with the definitions of the term appearing in the dictionaries. The court then properly stated that the common meaning of a tariff term is a question of law and not of fact, citing *United States* v. *Florea & Co., Inc.*, 25 C. C. P. A. (Customs) 292, T. D. 49396, and *United States* v. *Shalom & Co.*, 33 C. C. P. A. (Customs) 29, C. A. D. 311. It further stated that the courts are bound to judicially notice the common meaning of tariff terms, and that while dictionaries and like authorities may be examined as to the common meaning, such publications may not be properly considered as evidence, but only as aids to

the memory and understanding of the court, citing *Nix* v. *Hedden*, 149 U. S. 304. In the trial court's decision it is stated that counsel for appellant admitted that the power chain saws are machines comprising a saw, but contended that the goods are properly classifiable as claimed, "just as the machine drag saws and band saws are 'saws.'"

The court held the imported merchandise to be more than a saw for the reason that it is a sawing machine, and properly classifiable under paragraph 372. It stated that while Congress provided in paragraph 340 for power-operated saws, there is no suggestion that it was intended to include within such provision machines for furnishing power for the operation of saws, especially when the saw *per se* is a very small part of the entire device.

The court was of opinion that paragraph 340—because it provided for saws "finished or further advanced than tempered and polished"— was providing for such articles as "saws" and not for the mechanical equipment necessary for machine operation. It noted that the merchandise involved in the case of *Mill & Mine Supply Co.* v. *United States*, 7 Cust. Ct. 168, C. D. 561, was similar, if not identical, to the merchandise here involved. From the judgment in that case an appeal was taken by the Government to this court and disposed of by us in *United States* v. *Mill & Mine Supply Co.*, 30 C. C. P. A. (Customs) 128, C. A. D. 224. The merchandise there was invoiced as "Gas-driven Chain Saws" and "Guiding Bars for above Machines." The importation was classified under paragraph 353 of the present tariff act as possessing as an essential feature an electrical element or device. In the protest it was claimed that the merchandise was properly dutiable under paragraph 340, or alternatively under paragraph 372, providing for "all other machines, finished or unfinished, not specially provided for."

The trial court in that case sustained the importer's claim that the involved saws were properly dutiable under paragraph 372, and overruled all other claims. No cross appeal was taken to this court, and consequently the applicability of classification under paragraph 340 was not before us. In affirming the judgment appealed from, we agreed with the holding of the trial court that gas-driven saws and parts thereof were properly classifiable under paragraph 372 as "all other machines and parts."

The trial court in the instant case held that Congress never intended to include with "hand, back, and all other saws, not specially provided for," merchandise such as is here involved.

It appears to us that the judgment appealed from should be affirmed. It is clear that the imported articles are machines. Such machines are also properly known as portable machines or tools. It is also

clear that paragraph 340 may properly be termed the "saw" paragraph in that it provides for all saws, either power or hand driven.

The Swedish trade agreement appears to separate the saws upon which lower duties are to be exacted into two classes, the first of which seemingly pertains to power-driven saws, and the second, under which counsel for appellant claims, consists of manually operated saws.

It is true that in the definitions contained in all of the dictionaries, the term "saws" is quite broad, in that it includes not only the blades of saws but also power saws and their motive power, of which the present importation is a good exemplar. Therefore, the term "saw," broadly considered, seems to include any kind of a device that is used for sawing material, either by hand or machine driven. Consequently we deem it fitting to seek information from the Congressional history of paragraph 340, as well as the background of the trade agreement.

In the Summary of Tariff Information, 1929, Vol. 1, pages 730–731, the following appears:

### SAWS

*Description and uses.*—Crosscut saws of the hand-manipulated type vary greatly in character. They are used in logging and in sawing wood for fuel. Drag-saws are similar to crosscut saws, but are operated by machinery, and are usually used in mills for cutting defective logs or for cutting logs into shorter lengths. Pit saws are handsaws used for sawing boards directly from the log. Mill saws are upright saws operated by machinery and used for rift sawing. The circular saw of disk shape is commonly used in sawmills and for sawing wood for fuel. Band saws are continuous bands run over pulleys and used in sawmills: they require the highest grade of steel and the greatest care in manufacture of any of the saws mentioned. A backsaw is a small variety of handsaw. It is used for very fine cutting requiring a straight or even saw cut. The blade is so thin that a strip of metal, usually steel or brass, is necessary along the back to prevent its buckling. Handsaws, broadly speaking, include such saws as buck, hack, keyhole, plumbers', back, pruning saws, and many others for special purposes. The most common is the familar handsaw used by carpenters and other woodworkers. A jeweler's saw has a very thin and narrow blade, tempered hard throughout, for cutting metal, and is used in a frame. Metal-splitting saws, whether of carbon or highspeed tool steel, are classed as saws, although they more closely resemble thin milling cutters.

From that summary it would seem that "crosscut saws," appearing in paragraph 340, are hand driven, as are "pit saws"; that "drag saws" and "mill saws" are machine operated, as are "band saws."

In The Digest and Trade Data With Respect to Products on Which Concessions Were Granted by the United States in the Trade Agreement with Sweden, the following appears:

*Description and uses*

Mill saws are upright saws operated by machinery and used for rift sawing. Pit saws are hand saws used for sawing boards directly from the log. Drag saws are similar to crosscut saws but are operated by machinery; they are used in mills for cutting defective logs into shorter lengths. Band saws are continuous bands run over pulleys and used in sawmills for cutting lumber

from the log and in wood working plants for many sawing operations. They require the highest grade of steel and the greatest care in manufacture of any of the saws mentioned.

Crosscut, hand, back, and other saws, n. s. p. f. are almost exclusively hand operated saws. Crosscut saws are used in logging and in carpentry. A back saw is a small hand saw with a thin blade reenforced by a strip of steel on the back of the blade. It is used in very fine carpentry and joinery. Hand saws include many types, such as buck, hack, keyhole, carpenters', plumbers', pruning, and other saws.

The statement in the above quoted digest, in the last paragraph thereof, appears to us to clearly exclude the kind of saws involved herein, and since appellant is confined in his claim to the section of the trade agreement in which manually operated saws alone are provided for, it is not possible, in our opinion, to sustain its contention.

We are in agreement with the holding of the trial court that the imported merchandise is something more than saws, and that in enacting paragraph 340, Congress was providing for the articles named therein as saws only. Otherwise we can not conceive why in the paragraph duty is assessed against the articles set forth therein as being "finished or further advanced than tempered and polished." Surely such characterization of the saws contained in that paragraph can apply to nothing except the saws *per se*. In the power chain saws, the classification of which presents the issue before us, the portion of the machine which makes the kerf in the workpiece is but a very small part of a complicated machine, and we, as was the trial court, are unable to find anything to suggest that Congress intended to include in paragraph 340 the power mechanism designed to drive the cutting chain. If our reasoning is not correct, it would be logical to include within the term "saws" any and all mechanisms or machines, such as pulleys, belts and engines, as parts of a saw. This, in our opinion, would lead to an absurdity.

Counsel for appellant in the trial stated that "where there is a designation by use, the name—either common or commercial name—is apparently immaterial, so long as the use is provided for in the paragraph." That statement was made by counsel to sustain a contention that the word "saws," provided for in paragraph 340, is a designation by use.

In their brief before us, counsel for appellant state that, "The involved instrument is a saw because it saws!" In support of the contention for use designation they rely principally on the cases of *Julius Forstmann & Co.* v. *United States*, 28 C. C. P. A. (Customs) 222, C. A. D. 149, and *Frank P. Dow Co., Inc.* v. *United States*, 21 C. C. P. A. (Customs) 282, T. D. 46816.

In the former of those two cases the competing tariff terms were "all other textile machinery" and "articles having as an essential feature an electrical element or device." It was held by us that under the

rule of construction a classification by use prevails over a general classification or even an *eo nomine* designation, and that the imported articles in that case were properly classifiable as "all other textile machinery," it being held that that phrase was a designation by use.

In the latter case we held that "household utensils" controlled the classification of electric vacuum cleaners, rather than the term "machines." We are unable to see how the decisions of this court in those cases is of benefit to appellant. If we were to agree with counsel that they are even persuasive, we would of necessity have to read into paragraph 340, instead of the expression "and all other saws," the phrase "all other sawing implements." Manifestly this may not be done.

In their brief counsel for appellant admit that no formal attempt has been made to establish designation by use, and state, "So it is advisable to discuss the meaning of the word 'saws' as an appellation, that is, as the *name of an article* rather than the name of a use." (Italics quoted.) From the latter statement it appears to us that the contention for use designation is not seriously urged.

It is clear to us that there was no error in the judgment of the lower court. Certainly the involved merchandise consists of machines, and, as they are not specifically provided for, they were properly classified by the collector, as was held by the trial court.

The judgment of the United States Customs Court is therefore *affirmed*.